**In re ADVANCED BATTERY TECHNOLOGIES, INCORPORATED.**

Ruble Sanderson, individually and on behalf of all others similarly situated, Plaintiff–Appellant,

v.

Bagell, Josephs, Levine & Co., LLC, Friedman LLP, EFP Rotenberg, LLP, Defendants–Appellees.*

Docket No. 14–1410–cv.

United States Court of Appeals, Second Circuit.

Argued: Oct. 21, 2014.

Decided: March 25, 2015.

---

* The Clerk of Court is directed to amend the official caption to conform with the above.

Murielle J. Steven Walsh, Pomerantz LLP, New York, N.Y. (Marc I. Gross, Star M. Tyner, Pomerantz LLP, New York, NY; William B. Federman, Federman & Sherwood, Oklahoma City, OK; Laurence Mathew Rosen, The Rosen Law Firm, P.A., New York, NY, on the brief), for Plaintiff–Appellant.

William J. Kelly (Peter J. Larkin, on the brief), Wilson, Elser, Moskowitz, Edelman & Dicker LLP, White Plains, NY, for Defendants–Appellees Bagell, Josephs, Levine & Co., LLC, and Friedman LLP.

Gabriel Mark Nugent (Paul Andrew Sanders, on the brief), Hiscock & Barclay, LLP, Syracuse, NY, for Defendant–Appellee EFP Rotenberg, LLP.

Before: WALKER, CABRANES, and LOHIER, Circuit Judges.

LOHIER, Circuit Judge:

Lead Plaintiff Ruble Sanderson, individually and on behalf of all others similarly situated, appeals from an order of the United States District Court for the Southern District of New York (McMahon, J.) denying the plaintiffs' motion for leave to file a second amended complaint (the "Proposed Complaint"). As relevant here, the District Court dismissed the previous complaint against defendants Bagell, Josephs, Levine & Co., Friedman LLP, and EFP Rotenberg, LLP (collectively, the "Auditor Defendants") because it failed adequately to plead scienter as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4. Sanderson sought to correct these deficiencies by moving to file the Proposed Complaint. That complaint claims that the Auditor Defendants committed securities fraud by falsely representing that they performed their audits of Advanced Battery Technologies, Inc. ("ABAT") in accordance with professional standards and that ABAT's filings accurately reflected its financial condition from the 2007 through the 2010 fiscal years. Concluding that the Proposed Complaint failed to remedy the deficiencies identified in the initial complaint, the District Court denied the motion to amend as futile. We affirm.

## BACKGROUND

I. *The Allegations in the Proposed Complaint*

We accept as true the facts alleged in the Proposed Complaint because Sander-

son appeals from the denial of leave to amend on the ground of futility. *See Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 116 n. 1 (2d Cir.2012).

ABAT is a Delaware corporation whose primary operations and subsidiaries are located in China. It principally "design[s], manufacture[s], and market[s] ... rechargeable polymer lithium-ion (PLI) batteries" for use in consumer products, such as portable computers, as well as electric vehicles. In 2004 ABAT became obligated to file financial statements with the Securities and Exchange Commission ("SEC") when it decided to list its stock on a United States exchange through a reverse merger. At all relevant times, ABAT contemporaneously filed financial statements with China's State Administration of Industry and Commerce ("AIC"), a regulatory agency to which Chinese companies must submit such statements as part of an annual examination.

Between May 15, 2007, and March 29, 2011, ABAT's SEC filings painted a favorable financial picture that included "increasing revenues, gross profits and net income." These financial figures, however, contrasted with the figures reported in ABAT's contemporaneous filings with the AIC in China. In particular, from 2007 to 2009 ABAT reported losses to the AIC while it reported significant profits to the SEC. The differences were indisputably material. Taking 2007 as an example, ABAT reported to the AIC that its revenues were approximately $145,000 and that it suffered an operating loss of $1 million, while it reported to the SEC revenues of $31.9 million and a profit of $10.2 million.

The Proposed Complaint alleges that these and other discrepancies in the financial figures reported to the AIC and SEC cannot be explained by differences between those agencies' reporting requirements and practices alone. If anything, it claims, Chinese accounting rules more generously recognize revenue than Generally Accepted Accounting Principles ("GAAP") in the United States.

In addition to presenting two very different financial pictures to regulators in China and the United States, ABAT is alleged to have misrepresented or failed to fully disclose material facts about two transactions.

First, in December 2010 ABAT announced that it would purchase Shenzhen Zhongqiang New Energy Science & Technology Co., Ltd. ("Shenzhen Zhongqiang") for $20 million, even though Shenzhen Zhongqiang had generated revenues of less than $450,000 in 2009 and had suffered losses each year since its inception in 2007. The Proposed Complaint alleges that in announcing the Shenzhen Zhongqiang acquisition ABAT failed to disclose that its Chairman and Chief Executive Officer, Zhiguo Fu, owned Shenzhen Zhongqiang and had paid a mere $1 million for the company in 2008. The transaction allegedly enabled Fu to siphon funds from ABAT for his own personal use.

Second, ABAT allegedly misrepresented the nature of its ownership interest in one of its purported subsidiaries, Heilongjiang Zhongqiang Power–Tech Co., Ltd. ("ZQ Power–Tech"). In its SEC filings for 2007 and 2008, ABAT identified ZQ Power–Tech as a wholly-owned subsidiary of Cashtech, which was itself a wholly-owned ABAT subsidiary. ABAT's 2009 SEC filings revealed that ZQ Power–Tech was actually owned by Fu and other investors. On April 6, 2011, moreover, ABAT responded to allegations of fraud by "effectively admit[ting] that it did not actually own [ZQ Power–Tech] from 2004 through 2009." Although it sought to justify initially accounting for ZQ Power–Tech as a wholly-owned subsidiary because Fu and his co-investors had transferred to ABAT

all of the "benefits and obligations" of ZQ Power–Tech, ABAT explained that it ultimately "decided that it would be more appropriate to explain the relationship in detail."

The remaining defendants in this matter are two auditing firms, to which we refer as the Auditor Defendants. ABAT's outside auditors from 2006 through December 14, 2010, were defendants Bagell, Josephs, Levine & Co., and its successor, Friedman LLP (together, "Bagell Josephs").[1] Defendant EFP Rotenberg, LLP ("EFP") served as ABAT's auditor from December 14, 2010, through the filing of the Proposed Complaint in September 2012.

The relevant audit opinions issued during these periods certified that ABAT's financial statements conformed with GAAP and "present[ed] fairly, in all material respects, the financial position of [ABAT]." They also represented that the audits themselves were conducted "in accordance with the standards of the Public Company Accounting Oversight Board." The Proposed Complaint alleges that these statements were materially false and misleading and that the Auditor Defendants "ignored or recklessly disregarded numerous red flags that should have alerted them to ABAT's fraudulent financial statements." As relevant here, the Proposed Complaint identifies the following "red flags": (1) the contrasting set of financial filings to the AIC and the SEC, (2) the Shenzhen Zhongqiang related-party transaction, (3) the mischaracterization of the ownership of ZQ Power–Tech, (4) the unreasonably high profits that ABAT reported, and (5) the mere fact that ABAT became listed on a United States exchange through a reverse merger. It focuses in particular on the first two of these "red flags." As to both, the Proposed Complaint alleges that Bagell Josephs auditors visited ABAT's offices in China, had "ready access to ABAT's financial records" there, and "presumably relied on the same underlying financial records and data … that had formed the basis for ABAT's AIC filings." Finally, an accounting expert's opinion concludes that the Auditor Defendants' failure to uncover or appreciate the significance of these "red flags" constituted "an extreme departure from the reasonable standards of care [they were] obligated to meet as ABAT's auditor[s]."

In 2011 ABAT's fraudulent conduct and its reporting of significantly lower revenue and profit in its AIC filings as compared to its SEC filings was exposed in reports by third-party publications. A March 2011 report discussed ABAT's financial statements. Almost immediately after that report was published, the price of ABAT shares plunged nearly forty-eight percent.

## II. *Procedural History*

Starting in April 2011, five related securities fraud actions were filed against ABAT and certain ABAT executives (collectively, the "ABAT Defendants"). After these actions were consolidated, lead plaintiff Sanderson filed a Corrected First Amended Consolidated Class Action Complaint (the "Consolidated Complaint") to add Bagell Josephs and EFP as defendants. Both the ABAT Defendants and the Auditor Defendants moved to dismiss the Consolidated Complaint.

The District Court denied the motion as to the ABAT Defendants but granted it as to the Auditor Defendants.[2] The court held that the Consolidated Complaint's allegations that the auditors failed to conform their audits to professional standards

---

1. In 2010 Bagell, Josephs, Levine & Co. merged into Friedman LLP.

2. Sanderson and the ABAT Defendants subsequently settled.

established at best an inference of negligence, not recklessness or intentional misconduct. It also determined that all but one of the purported "red flags" were either not red flags or not alleged to have been known to the Auditor Defendants. It concluded that the remaining alleged "red flag"—the recharacterization of the ownership of ZQ Power–Tech—was "not sufficiently egregious" to support the requisite scienter. Lastly, the court held that the named plaintiffs lacked standing to sue EFP because they purchased their ABAT shares before EFP issued its audit.

Sanderson moved for leave to amend by filing the Proposed Complaint to cure the standing and scienter deficiencies identified by the District Court. The District Court denied the motion, concluding that even the new allegations failed to "rise to the level of recklessness."

## DISCUSSION

■ We consider only whether the Proposed Complaint adequately pleaded facts giving rise to a strong inference that the Auditor Defendants acted with "scienter, a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (quotation marks omitted); *see Novak v. Kasaks*, 216 F.3d 300, 306–07 (2d Cir.2000) (quoting 15 U.S.C. § 78u–4(b)(2)). In determining whether the facts alleged in the Proposed Complaint establish "the requisite 'strong inference' of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Tellabs*, 551 U.S. at 324, 127 S.Ct. 2499. In other words, it is not enough "to set out 'facts from which, if true, a reasonable person *could* infer that the defendant acted with the required intent.'" *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d

98, 110 (2d Cir.2009) (quoting *Tellabs*, 551 U.S. at 314, 127 S.Ct. 2499). The inference of scienter must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324, 127 S.Ct. 2499.

■ Sanderson argues that the Proposed Complaint adequately and with sufficient particularity alleges facts that constitute strong circumstantial evidence of conscious recklessness. Because Sanderson does not allege any motive for the Auditor Defendants to defraud and premises his claim entirely on a theory of recklessness, "the strength of the circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir.2001). In the securities fraud context, recklessness "must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care," *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir.2000) (quotation marks omitted), "not merely a heightened form of negligence," *Novak*, 216 F.3d at 312 (quotation marks omitted). And for an independent auditor, the conduct "must, in fact, approximate an actual intent to aid in the fraud being perpetrated by the audited company," *Rothman*, 220 F.3d at 98 (quotation marks omitted), as, for example, when a defendant conducts an audit so deficient as to amount to no audit at all, or disregards signs of fraud so obvious that the defendant must have been aware of them, *see Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 160–61 (2d Cir.2012). Mere "allegations of GAAP violations or accounting irregularities," *Novak*, 216 F.3d at 309, or even a lack of due diligence, *see S. Cherry St.*, 573 F.3d at 112, will not state a securities fraud claim absent "evidence of corresponding fraudulent intent," *Novak*, 216 F.3d at 309 (quotation marks omitted).

In asking us to assess the allegations in the Proposed Complaint, Sanderson leaves unchallenged the District Court's partial dismissal of the initial Consolidated Complaint and appeals only its denial of leave to amend. With that in mind, we consider *de novo* only whether the Proposed Complaint alleges non-conclusory facts that, if taken as true, would raise a strong inference of scienter as to each of the Auditor Defendants.

## I. *Bagell Josephs*

■ Sanderson argues that the amendment would not be futile because the Proposed Complaint now alleges that when Bagell Josephs audited ABAT's SEC filings, it had access to ABAT's conflicting AIC filings and financial information, and adds a reference to the accounting expert's opinion that "no reasonable auditor would have failed to obtain ABAT's AIC filings." Sanderson also invokes the allegations in the Proposed Complaint relating to the one "red flag" recognized as such by the District Court: that Bagell Josephs ignored obvious signs that ABAT misrepresented the ownership of ZQ Power–Tech.

We agree with the District Court that these allegations together still fail to constitute strong circumstantial evidence of recklessness. As Sanderson conceded at oral argument, none of the accounting standards on which he relies—the Generally Accepted Auditing Standards, Statements on Auditing Standards, or GAAP—specifically requires an auditor to inquire about or review a company's foreign regulatory filings. Such a legal duty could arise under certain circumstances. But without more than exists here—including the accounting expert's conclusory statement—we do not view these standards as imposing a general duty to inquire the breach of which would constitute recklessness.

■ Sanderson alternatively argues that the Auditor Defendants had a duty to review ABAT's AIC filings in view of ABAT's unusually high profit margins reported in its SEC filings and because ABAT, based largely in China, employed a reverse merger to access our capital markets. We briefly address each argument in turn. First, in our view, ABAT's report of high profit margins in its SEC filings triggered, at most, a duty to perform a more rigorous audit of *those* filings. They did not obligate Bagell Josephs to review ABAT's AIC filings. And "the fact that [Bagell Josephs] did not automatically equate record profits with misconduct cannot be said to be reckless." *Chill v. Gen. Elec. Co.,* 101 F.3d 263, 270 (2d Cir.1996). Second, as for the impact of ABAT's reverse merger, Sanderson does not allege that heightened scrutiny of Chinese companies that used reverse mergers in the United States began prior to mid–2011—in other words, after the relevant audits in this case. Accordingly, we are not persuaded that these allegations signify that Bagell Josephs's failure to review ABAT's Chinese regulatory filings in connection with its audits from 2007 through 2010 represented an "extreme departure from the standards of ordinary care" tantamount to fraud. *See Rothman,* 220 F.3d at 98.

■ Nor are we persuaded to infer recklessness from the allegations that Bagell Josephs had access to and "presumably relied on" the raw financial data underlying ABAT's AIC filings in China in 2008 but failed to see that the data contradicted ABAT's SEC filings. Sanderson urges that the *only* non-speculative inference to be drawn from these allegations is that Bagell Josephs's failure to spot the discrepancies was reckless. We disagree: a somewhat more compelling inference is that ABAT maintained two sets of data—

one for its Chinese regulators and another for its regulators in the United States—and fed Bagell Josephs false data to complete its audits.[3] This contrary inference coheres with the allegation that ABAT initially concealed rather than disclosed important facts about ZQ Power–Tech and the Shenzhen Zhongqiang transaction.

Finally, Sanderson argues that the allegations of fraud relating to ZQ Power–Tech create an inference that Bagell Josephs acted with the requisite recklessness. As alleged, Bagell Josephs's failure to discover that ABAT owned merely a beneficial, rather than a legal, interest in ZQ Power–Tech before ABAT disclosed the proper ownership does not give rise to a strong inference of scienter. This is true even when we consider this allegation together with all the other facts alleged in the Proposed Complaint. *See Tellabs*, 551 U.S. at 322–23, 127 S.Ct. 2499. At most, we can infer that Bagell Josephs was negligent in failing to uncover ZQ Power–Tech's true ownership prior to the disclosure.

For these reasons we agree that, as alleged in the Proposed Complaint, Bagell Josephs's failure to detect ABAT's fraudulent reporting is not conduct "approximat[ing] an actual intent to aid in the fraud being perpetrated by the audited company." *Rothman*, 220 F.3d at 98 (quotation marks omitted).

## II. *EFP*

Sanderson argues that the Proposed Complaint adequately pleads scienter on the part of EFP because it references the accounting expert's opinion and includes allegations that EFP "would have" discovered the fraudulent nature of the Shenzhen Zhongqiang acquisition had it performed "the most basic of audit duties."

Having already rejected the first argument in connection with Bagell Josephs, we address only the second. We have previously suggested that conditional allegations of the sort "that [a defendant] 'would' have learned the truth" about a company's fraud "if [it] had performed the 'due diligence' it promised" are generally insufficient to establish the requisite scienter for private securities fraud claims "under the PSLRA's heightened pleading instructions." *See S. Cherry St.*, 573 F.3d at 110, 112 (quotation marks and alteration omitted). Nonetheless, Sanderson attempts to bolster the allegation by claiming that Shenzhen Zhongqiang's inflated purchase price should have alerted EFP that the transaction was a sham. But the Proposed Complaint fails to allege that EFP knew that ABAT paid an inflated price for Shenzhen Zhongqiang. As alleged, EFP's failure to uncover and appreciate the significance of the inflated price therefore does not represent "an extreme departure from the standards of ordinary care." *Rothman*, 220 F.3d at 98. Nor do these factual allegations give rise to a strong inference of either fraudulent intent or conscious recklessness, rather than mere negligence.

## CONCLUSION

We AFFIRM the judgment of the District Court.

---

**3.** Indeed, ABAT also may have fed Chinese regulators false data.